[ECF No. 26]

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| **RANDEL J. PATRICK, JR.,**<br><br>　　　　　**Plaintiff,**<br><br>　v.<br><br>**EQUIFAX INFORMATION SERVICES,**<br>**LLC, et al.,**<br><br>　　　　　**Defendants.** | **Civil No. 23-4092 (CPO/EAP)** |

## OPINION

This matter comes before the Court on Plaintiff's Motion for Leave to File an Amended Complaint. *See* ECF No. 26 ("Pl.'s Mot."). Defendants oppose the Motion. *See* ECF No. 33 ("Defs.' Opp."). Plaintiff filed a reply brief. *See* ECF No. 36 ("Pl.'s Reply"). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Plaintiff's Motion is **GRANTED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 31, 2023, Plaintiff Randel J. Patrick, Jr. filed this putative class action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, alleging that the Defendant Consumer Reporting Agencies ("CRAs") Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union") (collectively "the CRA Defendants") falsely reported that Plaintiff was deceased to unidentified third-party creditors. ECF No. 1, Plaintiff's Complaint

("Pl.'s Compl."), ¶¶ 1, 9, 15, 37-38, 52.[1]  The CRA Defendants are both businesses who "compile[] and maintain[] files on consumers on a nationwide basis and [are] regularly engaged in the business of assembling, evaluating, and distributing information concerning consumers to third parties for the purposes of furnishing consumer reports, as defined under 15 U.S.C. § 1681a(p)."  *Id.* ¶ 9 (Equifax), ¶ 15 (Trans Union).[2]

Plaintiff brings claims under two provisions of the FCRA.  First, Plaintiff alleges that the CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to institute or follow reasonable procedures to ensure the maximum possible accuracy of the information in his credit report.  *Id.* ¶ 105.  Second, Plaintiff claims that the CRA Defendants violated 15 U.S.C. § 1681i(a) as follows: (1) failing to conduct reasonable investigations in response to Plaintiff's letters disputing the accuracy of the information in his credit report; and (2) failing to provide notice of Plaintiff's dispute letters to the appropriate furnishers or alternatively, failing to provide Plaintiff all relevant data the CRAs received from the furnisher in response to the disputes.  *Id.* ¶¶ 106-07.

The timeline of events undergirding the Complaint in this matter is unclear.  *Id.* ¶ 36. Plaintiff, however, suspects that the inaccurate reporting began sometime in or around August 2022, when the CRA Defendants prepared and issued consumer reports concerning Plaintiff's bank account with Wells Fargo.  *Id.* ¶¶ 34-35, 37-40.  According to the Complaint, the CRA Defendants would usually receive updated death statistics via a data exchange agreement with the Social

---

[1]  In his initial Complaint, Plaintiff also asserted claims against Wells Fargo Bank, N.A. ("Wells Fargo") as the furnisher of the incorrect death data.  *See id.* ¶¶ 19, 51, 53-55, 64, 69-71, 75, 79, 81, 115-25.  On February 15, 2024, the parties filed a Stipulation of Dismissal as to Wells Fargo.  *See* ECF No. 44, Stipulation of Dismissal.  Accordingly, the Court includes the factual allegations against Wells Fargo only to the extent they are relevant to Plaintiff's claims against the remaining CRA Defendants.

[2]  Equifax and Trans Union have each admitted that they meet the FCRA's definition of a "consumer reporting agency."  *See* ECF No. 20, ¶ 9 (Equifax's Answer); ECF No. 9, ¶ 15 (Trans Union's Answer).

Security Administration ("SSA") and the Department of Commerce's National Technical Information Services ("NTIS"). *Id.* ¶¶ 44-45. Plaintiff alleges, however, that the CRA Defendants marked Plaintiff as deceased because of information from Wells Fargo—not the SSA or NTIS data integrations. *Id.* ¶¶ 53-54. Further, the CRA Defendants allegedly failed to cross-check the information they received from Wells Fargo with data from the SSA or NTIS and did not otherwise "attempt . . . to timely verify if plaintiff was deceased . . . ." *Id.* ¶¶ 48, 50.

Regardless of where they obtained the information, the CRA Defendants began producing reports stating that Plaintiff was deceased and therefore, no credit score was associated with his name. *Id.* ¶¶ 37, 40, 67, 93-94. When Defendants provided these reports to unidentified third-party creditors, *see id.* ¶ 52, "a chilling effect on applications for credit" followed, which prevented Plaintiff from obtaining certain necessities, such as auto financing, a home mortgage, a personal loan, and a renewed driver's license. *Id.* ¶¶ 92-98. Plaintiff specifically alleges that an unspecified mortgage company told him that it could not provide Plaintiff a mortgage because "[the CRA Defendants] are both reporting you as deceased and therefore there is no credit score associated with your name." *Id.* ¶ 99. Plaintiff asserts that if the CRA Defendants had "maintained reasonable procedures[,] [they] would have realized that Plaintiff [was] not deceased." *Id.* ¶ 49.

After he learned of the false reporting, Plaintiff attempted to resolve the issue by sending letters to each CRA Defendant on or about May 1, 2023. *Id.* ¶¶ 55, 61-62. The Complaint alleges that the respective responses from the CRA Defendants were legally deficient. *Id.* ¶¶ 59, 61-63. For example, Plaintiff claims that Equifax did not remove the deceased notation from Plaintiff's report and "instead confirmed [that] Plaintiff's name, date of birth, social security, and other similar personal information [were] correct." *Id.* ¶ 61. For its part, Trans Union allegedly updated Plaintiff's payment and financial data for his Wells Fargo account and then "confirmed [that Trans

Union] was still reporting Plaintiff as deceased." *Id.* ¶ 62.  Notwithstanding, Trans Union "mailed

a response" to Plaintiff, anyway.  *Id.* ¶ 63.

Against this background, Plaintiff asserts on behalf of himself and two putative classes,[3]

that the CRA Defendants willfully[4] and negligently[5] violated §§ 1681e(b) and 1681i(a) in several

respects.  *See id.* ¶¶ 1, 23, 105-08, 111-13.  They are:

    a)  failure to follow reasonable procedures to assure the maximum possible
        accuracy of the information reported;
    b)  failure to remove and/or correct the inaccuracy and derogatory credit
        information after a reasonable request by Plaintiff;
    c)  failure to promptly and adequately investigate information [of] which each
        [CRA Defendant] had notice was inaccurate;
    d)  continual placement of inaccurate information into the credit report of the
        Plaintiff after being advised by the Plaintiff that the information was
        inaccurate;
    e)  failure to promptly delete information that was found to be inaccurate, or
        could not be verified, or that the source of the information had advised each
        [CRA Defendant] to delete;
    f)  failure to take adequate steps to verify information each [CRA Defendant]
        had reason to believe was inaccurate before including it in the credit report
        of the [Plaintiff]; and
    g)  failure to provide notice of a dispute to the Furnisher [of the disputed
        information] or, in the alternative, the failure to provide Plaintiff all relevant
        information received from the Furnisher in response to a dispute.

---

[3] In the proposed amended complaint, the two putative classes are identified as the "CRA Dispute Class" and the "CRA Payment Class."  ECF No. 26, Declaration of Eliyahu Babad, Esquire ("Babad Decl.") ¶ 5 & Ex. 1 (Proposed Amended Complaint ("Proposed Am. Compl.")) ¶¶ 24-25.  Each class is limited to New Jersey residents whose credit reports contained a deceased notation between August 1, 2021, and October 25, 2023.  *Id.*  The CRA Dispute Class consists of individuals who disputed the deceased notation with the CRA Defendants and allegedly received an insufficient response.  *Id.* ¶ 24.  The CRA Payment Class consists of consumers who the CRA Defendants reported as deceased while the consumers continued to make payments on one or more of the accounts listed on the report.  *Id.* ¶ 25.

[4] 15 U.S.C. § 1681o permits private actions against CRAs for negligent failure to comply with certain FCRA provisions.

[5] 15 U.S.C. § 1681n permits private actions against CRAs for willful failure to comply with certain FCRA provisions.  That provision, unlike 15 U.S.C. § 1681o, allows a plaintiff to recover punitive damages.  *See* 15 U.S.C. § 1681n(a)(2).

*Id.* ¶ 109.  As relief, Plaintiff seeks actual and statutory damages; attorneys' fees; and costs and expenses.  *Id.* ¶¶ 123-27.

After the CRA Defendants answered, the case proceeded into discovery.  *See* ECF No. 24, Scheduling Order.  On October 25, 2023, Plaintiff filed the present Motion seeking leave to file an amended complaint.  *See* ECF No. 26.  According to Plaintiff, the purpose of the amendment is to amend the factual allegations "to address the new facts that come to light."  ECF No. 26-2, Plaintiff's Brief in Support of the Motion for Leave to File an Amended Complaint ("Pl.'s Br."), at 1.  Specifically, the proposed amendment accounts for the fact that Plaintiff appeared on the SSA Death Master List during the period in which Defendants falsely reported that he was deceased.  *Id.*  On November 6, 2023, Trans Union filed its brief opposing the Motion.  *See* ECF No. 33.  Trans Union contends that the proposed amendment is improper because it is an impermissible shotgun pleading and because it is futile under Rule 15.  *See generally* Defs.' Opp. On November 14, 2023, Plaintiff filed a reply brief.  *See* ECF No. 36.  On February 15, 2024, Equifax joined in Trans Union's opposition.  *See* ECF No. 43.  Having been fully briefed, the Motion is now ripe for disposition.

## DISCUSSION

"The FCRA 'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'"  *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)).  "Congress intended to promote efficiency in the nation's banking system and to protect consumer privacy." *Id.* (citing *Cortez*, 617 F.3d at 688; 15 U.S.C. § 1681(a)).  Under the FCRA, CRAs collect consumer credit data from furnishers, such as banks and other lenders, and organize that material into individualized credit reports, which creditors and other third parties use to assess

consumer creditworthiness.  In this case, Wells Fargo, which has been dismissed from this case, *see* ECF No. 44, is the alleged furnisher, whereas remaining Defendants Trans Union and Equifax are CRAs.

In furtherance of Congress's policy goals, the FCRA places certain substantive and procedural obligations on CRAs.  Relevant here, CRAs must "maintain reasonable procedures" to "assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Further, § 1681i(a) imposes several additional duties on CRAs after they receive a dispute from a consumer concerning information appearing on his credit report.  Three of those duties are relevant to Plaintiff's claims.  First, § 1681i(a)(1) requires CRAs to "conduct a reasonable reinvestigation" in response to a consumer's dispute regarding "the completeness or accuracy of any item of information contained in a consumer's file[.]"  15 U.S.C. § 1681i(a)(1)(A).  Second, as per § 1681i(a)(2)(A), a CRA who receives a dispute from a consumer "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person."  15 U.S.C. § 1681i(a)(2)(A).  Third, under § 1681i(a)(2)(B), a CRA "shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller" during the statutory period in which the dispute remains live.  15 U.S.C. § 1681i(a)(2)(B).

Here, Plaintiff's proposed amendment alleges that Defendants violated both § 1681e(b) and § 1681i(a).  Babad Decl. ¶ 5 & Ex. 1, Proposed Am. Compl. ¶¶ 107-09.  The CRA Defendants oppose the amendment for two independent reasons:  (1) the proposed amendment is a shotgun pleading; and (2) the amendment is futile and therefore, impermissible under Rule 15.  The Court will address each argument in turn.

**A.       The Proposed Amendment Is Not a Shotgun Pleading.**

In federal court, each amended pleading must comport both with the requirements of Rule

15 and with the general prohibition on shotgun pleadings.  In a 1988 decision, "[t]he Third Circuit

. . . criticized 'the all too common shotgun pleading approach' to complaints."  *Bartol v.

Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Hynson ex rel. Hynson v. City

of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988)).  But the Third Circuit has been

silent on the issue since.  As a result, district courts within this Circuit look to well-developed

Eleventh Circuit case law on shotgun pleadings.  *Id.* at 859 & n.3; *see also, e.g.*, *Cambridge Mut.

Fire Ins. Co. v. Stihl Inc.*, No. 22-5893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023).

According to the Eleventh Circuit, "[a] shotgun pleading is a complaint that violates either

Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both."  *Barmapov v. Amuial*, 986 F.3d

1321, 1324 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313,

1320 (11th Cir. 2015)).  Rule 8(a)(2) requires every complaint to provide "a short and plain

statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited

as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  In addition, "[i]f

doing so would promote clarity," a party must state "each claim founded on a separate transaction

or occurrence . . . in a separate count . . . ."  *Id*.

There are "four readily identifiable categories of shotgun pleadings."  *Cambridge Mut. Fire

Ins. Co.*, 2023 WL 5928319, at *2 (citations omitted).  The categories are pleadings that:

(1)      contain multiple counts where each count adopts the allegations of all
         preceding counts;
(2)      are replete with conclusory, vague, and immaterial facts not obviously
         connected to any particular cause of action;
(3)      do not separate each cause of action or claim for relief into its own distinct
         count; and

> (4)     assert multiple claims against multiple defendants without specifying which
> of them are responsible for which acts or omissions.

*Id.* (citing *Bartol*, 251 F. Supp. 3d at 859)  "[A]lthough there are several characteristics that can

make a complaint a shotgun pleading, they all have in common one thing:  failure to give the

defendants adequate notice of the claims against them and the grounds upon which each claim

rests." *Id.* (cleaned up) (quoting *Grande v. Starbucks Corp.*, No. 18-04036, 2019 WL 1455445, at

*3 (E.D. Pa. Apr. 1, 2019)).  In addition, shotgun pleadings are so incoherent and confusing that

they "'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on

appellate court dockets, and undermine the public's respect for the courts.'"  *Pinson v. JPMorgan

Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019) (quoting *Vibe Micro, Inc. v.

Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

Here, Defendants argue that the proposed amended complaint is a shotgun pleading

because it does not provide sufficient notice of the conduct at issue in the case.  First, Defendants

argue that the proposed amendment impermissibly "lumps all of the Defendants together" by

referring to each CRA using the terms "Defendants" and "Bureaus."  *See* Defs.' Opp. at 8; *see

also, e.g.*, Proposed Am. Compl. ¶¶ 72-74; 76-77.  Second, Defendants assert that certain factual

allegations are too vague to provide sufficient notice of the claims against them.  Defs.' Opp. at 8.

For example, the CRA Defendants argue that the proposed amendment does not list the names of

the individual creditors that obtained the inaccurate credit report or specify which CRA sent each

inaccurate report to the respective creditors.  *Id.*  Plaintiff responds that the proposed amendment

is not a shotgun pleading; rather, it simply "alleges the same cause of action . . . [against] more

than one defendant because those defendants violated the same laws."  Pl.'s Reply at 7.  Plaintiff

further explains that the proposed pleading is vague because he has no way of knowing the

8

additional facts the CRA Defendants seek—including which conduct is attributable to which Defendant—until he obtains additional discovery. *Id.* at 3-5.

The Court finds that the proposed amendment is not a shotgun pleading. Although each count of the proposed amendment incorporates all of the preceding factual allegations by reference, *see* Proposed Am. Compl. ¶¶ 34, 105, 117, the resulting document still provides the CRA Defendants adequate notice of the challenged conduct. From the proposed amended complaint, a reader would have no trouble understanding the crux of Plaintiff's claims: that the CRA Defendants violated federal law by reporting incorrect information regarding Plaintiff's death status to creditors and by failing to conduct a reasonable reinvestigation in response to a related dispute. *See Pinson*, 942 F.3d at 1208 ("We have no trouble understanding [the plaintiff's] allegations that [the defendant furnisher] violated federal law by providing a false name to [the defendant CRA and] failing to investigate the accuracy of the information it provided . . . ."). Simply put, the proposed amendment provides sufficient notice because it identifies a specific inaccuracy on Plaintiff's credit reports. *Cf. Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1294-95 (M.D. Fla. 2017) (concluding that a FCRA complaint was a shotgun pleading because it stated only that the relevant credit reports contained "unspecified 'delinquency information'" and did not allege a specific inaccuracy).

In addition, the Court finds that two aspects of the CRA Defendants' litigation conduct undermine their assertion that the proposed amendment is a shotgun pleading. Here, Defendants have responded to the initial Complaint by answering it, rather than moving for a more definite statement pursuant to Rule 12(e). *Cf. Pinson*, 942 F.3d at 1208 (finding in a FCRA case that the defendant's choice not to file a motion for a more definite statement was evidence that the complaint was not a shotgun pleading). Further, Defendants have substantively opposed the present motion by challenging the merits of the claims set forth in the proposed amendment. *See*

Defs.' Opp. at 9-13 (arguing futility under the Rule 12(b)(6) standard); *cf. Pinson*, 942 F.3d at 1208 (holding that a FCRA complaint was not a shotgun pleading as evidenced by the defendant's ability to substantively attack the merits of the plaintiff's claim in a Rule 12(b)(6) motion to dismiss).

Lastly, at this juncture, Plaintiff requires discovery to ascertain the specific facts related to his causes of action. Thus, it would be inappropriate for the Court to deny an amendment for grouping the Defendants where, as here, Plaintiff alleges that both Defendants violated the same law in the same general manner, and Defendants are in a better position to trace specific conduct back to an individual actor. The Court finds that the proposed pleading is not so incoherent or confusing that it will "'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Pinson*, 942 F.3d at 1208 (quoting *Vibe Micro, Inc.*, 878 F.3d at 1295). Accordingly, the Court finds that the proposed amended complaint is not a shotgun pleading.

**B.      The Proposed Amendment Is Not Futile Under Rule 15.**

Having found that the proposed amendment is not a shotgun pleading, the Court turns to Defendants' second argument: that the proposed amendment is futile under Rule 15. *See* Defs.' Opp. at 9.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. A party may amend its pleading once as a matter of course within either 21 days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of 21 days after service of a responsive pleading or 21 days after a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). If those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Forman v. Davis*, 371 U.S. 178, 182 (1962).

The Third Circuit has adopted a liberal approach to the amendment of pleadings. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings.").  However, the Court may deny a motion for leave to amend when: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).  Ultimately, the decision whether to grant leave to amend is within the court's discretion. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).  Here, Defendants' sole argument under Rule 15 is that the proposed amendment is futile.

Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010).  Under those standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).  The burden of establishing futility is on the party opposing the amendment. *Anderson v. Salerno*, No. 19-19926, 2021 WL 11585763, at *2 (D.N.J. Jan. 8, 2021) (quoting *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)) ("The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendment is futile, and that, 'given the liberal standard applied to the amendment of pleadings,' that burden is a 'heavy' one.").

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Harrison Beverage Co. v. Dribeck Imps., Inc*., 133 F.R.D. 463, 468-69 (D.N.J. 1990) (footnotes omitted) (quoting 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1487 at 637-42 (2d ed. 1990)).  The Court will separately consider Plaintiff's two claims.

### 1.      Section 1681e(b)

Plaintiff's first claim is that the CRA Defendants failed to maintain reasonable procedures to ensure the maximum possible accuracy of the information in his credit report in violation of 15 U.S.C. § 1681e(b).  To successfully plead a § 1681e(b) claim, a plaintiff must allege factual matter plausibly establishing four elements:  "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez*, 617 F.3d at 708 (quotation marks omitted) (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

Defendants make two futility arguments regarding Plaintiff's § 1681e(b) claim.  First, Defendants assert that the proposed amendment is deficient as to the second element—failure to follow reasonable procedures—because it does not "articulate something more reasonable that Trans Union could have or should have done before erroneously reporting [Plaintiff] as deceased."

Defs.' Opp. at 9.  Second, Defendants argue that because Plaintiff appeared on the SSA's public Death Master List, the causal connection between the CRA Defendants' conduct and Plaintiff's injury is too speculative to support a plausible claim.  *Id.* at 10.  Plaintiff counters that Defendants themselves did "not rely on the [Death Master List]" to obtain or cross-check Plaintiff's purported death status and that even if they did, that particular procedure would not be "*per se* reasonable in every context."  Pl.'s Reply at 5.

Under § 1681e(b), "a reasonable procedure is one that a reasonably prudent person would undertake under the circumstances."  *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (cleaned up) (citing *Cortez*, 617 F.3d at 709).  "[W]hen assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'"  *Id.* (quotation omitted).  Where that balance lies "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."  *Id.* at 864-65 (cleaned up).  However, "the Third Circuit has never defined circumstances in which a credit reporting agency's procedures will be considered reasonable as a matter of law."  *McGrath v. Credit Lenders Serv. Agency, Inc.*, No. 20-2042, 2022 WL 580566, at *13 (E.D. Pa. Feb. 25, 2022) (cleaned up) (quoting *Hutchinson v. Carco Grp., Inc.*, No. 15-1570, 2015 WL 5698283, at *4 (E.D. Pa. Sept. 29, 2015)).  Nevertheless, "it is unusual for a court to make a determination as to reasonableness of a defendant's procedures on a motion to dismiss" before any discovery has occurred.  *Hutchinson*, 2015 WL 5698283, at *4-5 (citation omitted).

The Court finds that the proposed amendment plausibly pleads failure to maintain reasonable procedures under § 1681e(b) for the purposes of the Rule 15 analysis.  First, Plaintiff has sufficiently pleaded facts establishing an inaccuracy in his report.  *See* Proposed Am. Compl. ¶¶ 38, 41-43, 48.  In addition, and contrary to Defendants' assertion that Plaintiff has not "articulate[d] something more reasonable that Trans Union could have or should have done before

erroneously reporting [Plaintiff] as deceased[,]" Defs.' Opp. at 9, the allegations in the proposed amendment support the reasonable inference that Defendants could have confirmed that Plaintiff was deceased by maintaining specific reasonable procedures. For example, the proposed amendment states that Defendants had an opportunity to confirm Plaintiff's death status by contacting him directly in response to his dispute letters. *See* Proposed Am. Compl. ¶¶ 46-51. In addition, Plaintiff allegedly "continued to make payments on one or more of [the] financial accounts appearing on his credit report during the time he was being reported as deceased"; thus, Defendants could have verified whether the relevant financial institutions were in recent contact with Plaintiff. *Id.* ¶ 51. Viewing these allegations in the light most favorable to Plaintiff, *Doe*, 30 F.4th at 340, the Court finds that the proposed amendment complaint sufficiently describes reasonable alternative procedures.

The Court is also unpersuaded by Defendants' second argument. Relying on *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2018 WL 424410 (D.N.J. Jan. 12, 2018), Defendants argue that because the inaccurate information in Plaintiff's credit report also appeared on the SSA Death Master List, the causal connection between Defendants' conduct and Plaintiff's injuries is speculative and therefore, futile. As previously discussed, a plaintiff seeking relief under §1681e(b) must plead, among other elements, that "'the consumer's injury was caused by the inclusion of the inaccurate entry.'" *Cortez*, 617 F.3d at 708 (quoting *Philbin*, 101 F.3d at 963). The Court finds that Plaintiff has satisfied that standard by describing his inability to obtain credit after the CRA Defendants began reporting him as deceased. *See* Proposed Am. Compl. ¶ 89 ("[the] Defendants' erroneous reporting affected Plaintiff's reputation, creditworthiness, and credit score"); *id.* ¶ 100 ("Plaintiff was denied credit including a mortgage denial, auto financing, and a personal loan"); *id.* ¶ 101 ("Plaintiff's mortgage company told him it was unable to fund a mortgage because '[Defendant CRAs] are both reporting you as deceased'"); *id.* ¶ 102-03 (alleging

that Plaintiff suffered emotional distress, anxiety, stress, and experienced difficulty sleeping due to being reported as deceased).[6]

For these reasons, the Court will grant Plaintiff's Motion as to the § 1681e(b) claims.

**2.     Section 1681i(a)**

Next, Defendants argue that Plaintiff's § 1681i(a) claim is futile.  Defs.' Opp. at 11-13. Plaintiff's second claim is founded on allegations that the CRA Defendants did not perform a reasonable reinvestigation in response to Plaintiff's inquiry regarding the accuracy of his report, as is required by 15 U.S.C. § 1681i(a).  That provision provides, in pertinent part:

> if the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer and the consumer notifies the agency . . . the [consumer reporting] agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file [using the procedure described in § 1681i(a)(5)], before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).  The same overarching balancing test that governs the reasonable procedures analysis under § 1681e(b)—weighing the potential harm from inaccuracies against the burden of potential safeguards—also applies to the § 1681i(a) reasonable reinvestigation standard. *See Seamans*, 744 F.3d at 865.  However, "where a given notice contains only scant or vague

---

[6]   The Court further finds that to require the particularity the CRA Defendants have demanded would be inappropriate because Rule 8(a), not Rule 9(b), governs pleading in this case. Neither party has expressly argued that the heightened Rule 9(b) pleading standard applies; however, Defendants' argument presupposes application of that standard by requiring specific, particularized facts as to causation.  Rule 9(b) only governs pleading of the rare FCRA claim that sounds in fraud, mistake, or misrepresentation.  *Matthews v. Verizon Commc'ns Inc.*, No. 19-21442, 2020 WL 5201407, at *4 (D.N.J. Sept. 1, 2020) (rejecting an argument that the heightened Rule 9(b) standard applied to a FCRA claim because the plaintiffs' claims were "not grounded in allegations of fraud"; did not allege misrepresentation of facts or fraudulent inducement; and did not include "any other facts suggesting fraudulent conduct").  Plaintiff alleges that Defendants began issuing credit reports stating he was deceased and inadequately responded to disputes regarding the same.  Those are not a fraud- or misrepresentation-based claims.

allegations of inaccuracy, a more limited investigation may be warranted." *Id.* (citations omitted). To succeed under § 1681i(a), a plaintiff must establish two elements: "(1) that the consumer disputed the accuracy of an item in his or her credit file; and (2) that a reasonable investigation by the agency could have uncovered the inaccuracy." *Angino v. Trans Union, LLC*, No. 17-954, 2018 WL 6042901, at *3 (M.D. Pa. Nov. 19, 2018) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)), *aff'd*, 784 F. App'x 67 (3d Cir. 2019). Thus, "[b]efore they can recover on claims under section 1681i(a), consumers must show that they invoked their right to reinvestigation." *Klotz v. Trans Union LLC*, 246 F.R.D. 208, 212 (E.D. Pa. 2007).

Here, the proposed amended complaint refers to a single May 1, 2023 dispute letter. Proposed Am. Compl. ¶¶ 46-51. Defendants make two arguments against Plaintiff's § 1681i(a) claim. First, Defendants argue that Plaintiff's dispute was deficient in that it did not raise his right to reinvestigation and therefore, cannot form the basis of a plausible claim. Defs.' Opp. at 12. More specifically, Defendants argue that because Plaintiff's letter only referred to "incorrect" and "inaccurate" information, but did not specifically refer to the deceased notation, it did not invoke Plaintiff's rights to reasonable reinvestigation. *Id.* In support of their position, Defendants attached a copy of the May 1, 2023 dispute letter to their opposition brief. ECF No. 33-1, Declaration of Patrick D. Doran, Esquire ("Doran Decl.") ¶ 5 & Ex. 1, Dispute Letter. Second, Defendants assert that Plaintiff's § 1681i(a) claim is futile because the deceased notation was corrected by late May 2023, within thirty days of Plaintiff submitting his dispute. Defs.' Opp. at 13; *see also* Proposed Am. Compl. ¶ 68 ("[I]n late May 2023, Wells Fargo finally acknowledged they were incorrect in reporting Plaintiff as deceased."). To support their second argument, Defendants also provide Trans Union's May 11, 2023 response to Plaintiff's inquiry. *See* Doran

Decl. ¶ 6 & Ex. 2, Response Letter.  That letter states, in a section entitled "Your Investigation Results," that Plaintiff would continue to show as deceased.[7]  *Id.*; Response Letter at 5.

First, the Court finds that the proposed amendment plausibly pleads a dispute triggering Plaintiff's right to reinvestigation.  According to Plaintiff, the CRA Defendants should have known that Plaintiff was disputing the deceased notation on his file because the fact that Plaintiff sent dispute letters to Defendants provided notice that he was alive.  *See* Proposed Am. Compl. ¶¶ 47, 50.  For example, Plaintiff's dispute letter states that his credit reports contained "incorrect information as you [Trans Union] can tell because I am writing this dispute to you."  Doran Decl., Ex. 1, Dispute Letter.  The Court finds that these factual allegations plausibly plead a dispute that is sufficiently specific to trigger Defendants' obligation to perform a reasonable reinvestigation.

Defendants argue that the letter lacks the requisite specificity to trigger a reinvestigation and cite *Angino* for support.  There, the plaintiffs filed a § 1681i(a) claim against Trans Union.  *Angino*, 784 F. App'x at 67.  The Third Circuit affirmed the district court's entry of summary judgment for Trans Union, holding that the plaintiffs' § 1681i(a) claim failed because plaintiffs did not establish that any information in the subject report was inaccurate.  *Id.* at 68, 69-70.  The Court finds Defendants' reliance on *Angino* unavailing.  The *Angino* court found a § 1681i(a) claim deficient as a matter of law because the plaintiffs did not allege an inaccuracy in the report—not

---

[7]  The Court may consider materials attached to a party's submissions related to a motion to amend a pleading when the attachments are "undisputedly authentic" and heavily relied upon to form the basis of the proposed amendment.  *See Love v. Does*, No. 17-1036, 2020 WL 5760447, at *3 (D.N.J. Sept. 28, 2020) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)) ("In determining futility [of a proposed amendment], the Court considers only the proposed pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon the same."); *see also Robert v. Autopart Int'l*, No. 14-7266, 2016 WL 492762, at *3 (D.N.J. Feb. 8, 2016) (same).  Here, Plaintiff does not dispute the accuracy of the letters supplied by Defendants; and Plaintiff relies heavily on the same documents in the proposed amendment to form the factual basis of his § 1681i(a) claims.  Accordingly, the Court will consider the dispute and response letters to decide the present Motion.

because the dispute was insufficiently specific to raise the consumers' right to reasonable reinvestigation, as Defendants here have argued. *See id.* at 69-70 ("This case presents a different situation from others we have considered in the past . . . . [i]n each of those cases, the plaintiff identified inaccurate information on their reports"). Accordingly, *Angino* has little to say about this case, where the factual allegations plausibly establish an inaccuracy in Plaintiff's credit report.

Lastly, Defendants argue, without citing any authority, that Plaintiff's claim is not plausible because Wells Fargo—not the remaining CRA Defendants—corrected the deceased notation within 30 days of Plaintiff's May 1, 2023 letter. Defs.' Opp. at 13. In response, Plaintiff points out that Trans Union completed its reinvestigation on May 11, 2023—ten days after Plaintiff sent the dispute letter and almost twenty days before Wells Fargo began transmitting correct information. Pl.'s Reply at 7; *see also* Doran Decl., Ex. 2, Response Letter.

The Court finds that the correction made by Wells Fargo does not render Plaintiff's claims futile. The crux of Defendants' argument is that Plaintiff suffered no harm under § 1681i(a) because the information was corrected by the furnisher—not the CRA Defendants—within 30 days of Plaintiff's dispute. However, Trans Union concluded its reinvestigation by notifying Plaintiff of the results nearly twenty days before Wells Fargo began reporting correct information. *See* Doran Decl., Ex. 2, Response Letter. At a minimum, the allegations in the proposed amendment plausibly establish that Plaintiff was harmed by Trans Union's allegedly deficient response between May 11, 2023, when Trans Union closed the inquiry, *see* Doran Decl., Ex. 2, Response Letter at 5, and the end of May 2023, when Wells Fargo allegedly corrected the inaccuracy. Accordingly, the Court finds that Plaintiff's § 1681i(a) claim is not futile and leave to amend the Complaint should be granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Leave to File an Amended Complaint is

**GRANTED**.  An appropriate Order follows.


s/ Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.