[ECF No. 63]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **RANDEL J. PATRICK, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC, et al.,**<br><br>Defendants. | Civil No. 23-4092 (CPO)(EAP) |

## OPINION

This matter comes before the Court on the Motion by Plaintiff and Judah Stein, Esq.—a named partner at the firm representing Plaintiff in this matter—to Quash Defendant's subpoena seeking Mr. Stein's deposition testimony. *See* ECF No. 63-1, Brief in support of the Motion to Quash ("Pl.'s Br."), at 3. Defendant Trans Union has opposed the Motion. *See* ECF No. 65 ("Def.'s Opp."). Plaintiff and Mr. Stein have filed a reply brief. *See* ECF No. 68 ("Pl.'s Reply"). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, the Motion to Quash is **GRANTED**.

## BACKGROUND

On July 31, 2023, Plaintiff Randel J. Patrick, Jr. filed this putative class action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, alleging that the Defendant Consumer Reporting Agencies ("CRAs") Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union") (collectively "the CRA Defendants") falsely reported that

Plaintiff was deceased to unidentified third-party creditors. *See* ECF No. 1, Plaintiff's Complaint ("Compl."), ¶¶ 1, 9, 15, 37-38, 52.[1] Plaintiff filed an Amended Complaint on May 16, 2024. ECF No. 57, Amended Complaint ("Am. Compl.").

According to the Amended Complaint, in early 2023, Plaintiff and his wife, Boni Patrick ("Mrs. Patrick"), decided to list for sale a home they owned jointly ("the Seminole property") after making minor repairs. ECF No. 65-2, Declaration of Patrick D. Doran, Esquire ("Doran Decl.") ¶ 5 & Ex. C, Deposition Transcript of Boni Patrick ("Boni Patrick Tr.") at 36:11-20, 39:13-15. Plaintiff and his wife, however, soon learned that his credit report showed that he was deceased. Boni Patrick Tr. 36:17-21. Presuming that the credit report issue would prevent them from listing the property, they "figured [they] would try and refinance to get some money out [of the house] to do some upgrades." *Id.* at 36:20-22.

Plaintiff alleges that he thereafter contacted Judah Stein, Esquire regarding the deceased notation on his credit report. *See* Pl.'s Br. at 2; *see also* ECF No. 68-2, Reply Declaration of Eliyahu Babad, Esquire ("Babad Reply Decl.") ¶ 3. Mr. Stein is a named partner at the firm of Stein Saks, PPLC, and the Plaintiffs are clients of the firm's partners. Babad Reply Decl. ¶¶ 2, 4-5. According to Plaintiff, he initially directed Mr. Stein to "attempt to have Trans Union correct the deceased reporting without the need for litigation." Pl.'s Br. at 2. As part of that effort, Mr. Stein suggested that Plaintiff apply for a mortgage through a broker, and he recommended Mr. Daniel Soffer, a long-time friend and Vice President of Funding Resources Mortgage Corp. ("Funding Resources"). Def.'s Opp. at 65; *see also* Doran Decl. ¶ 15 & Ex. M, Deposition

---

[1] In his initial Complaint, Plaintiff also asserted claims against Wells Fargo Bank, N.A. ("Wells Fargo") as the furnisher of the incorrect death data. *See id.* ¶¶ 19, 51, 53-55, 64, 69-71, 75, 79, 81, 115-25. On February 15, 2024, the parties filed a Stipulation of Dismissal as to Wells Fargo. *See* ECF No. 44, Stipulation of Dismissal. Accordingly, the Court includes the factual allegations only to the extent they are relevant to Plaintiff's claims against the remaining CRA Defendants.

Transcript of Daniel J. Soffer ("Soffer Tr.") at 42:3-8.  As discussed below, the parties dispute who submitted Plaintiff's application to Funding Resources, and testimony regarding those and subsequent events is unclear.  In any event, on May 1, 2023, Funding Resources issued a letter denying Plaintiff's loan application because the Defendant CRAs were reporting him as deceased. *See* Doran Decl. ¶ 3 & Ex. A, Denial Letter.

Plaintiff filed suit on July 31, 2023, setting forth claims under two provisions of the FCRA.  First, Plaintiff alleges that the CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to institute or follow reasonable procedures to ensure the maximum possible accuracy of the information in his credit report.  Am. Compl. ¶ 98.  Second, Plaintiff claims that the CRA Defendants violated 15 U.S.C. § 1681i(a) by (a) failing to conduct reasonable investigations in response to Plaintiff's letters disputing the accuracy of the information in his credit report; and (b) failing to provide notice of Plaintiff's dispute letters to the appropriate furnishers or alternatively, failing to provide Plaintiff all relevant data that the CRAs received from the furnisher in response to the disputes.  Am. Compl. ¶¶ 99-100.

During discovery, Trans Union served a subpoena on Funding Resources, requesting all documents related to Plaintiff's mortgage application.  Doran Decl. ¶ 4 & Ex. B, Subpoena.  In response, Funding Resources produced, among other documents, email communications between Mr. Soffer, Mr. Stein, and Plaintiff regarding Plaintiff's application.  Trans Union then deposed Plaintiff, his wife Boni Patrick, and Mr. Soffer.  *See* Doran Decl., Exs. C, D, M.  According to Trans Union, those depositions produced "conflicting testimony about the Funding Resources mortgage application and the alleged subsequent denial."  Def.'s Opp. at 4.  Specifically, Trans Union alleges that because Randall and Boni Patrick both testified that they do not recall specific details concerning the Funding Resources loan application process, Mr. Stein must have had some unique part in procuring and drafting the denial letter.  *Id.* at 2, 4.

> Trans Union further claims that:
>
> (i) [Mr. Stein] referred Plaintiff and his wife to Funding Resources to seek pre-approval of a mortgage loan; (ii) Mr. Stein had non-privileged communications with an employee of Funding Resources [Soffer] about Plaintiff; and (iii) . . . Mr. Stein [is] the only other individual who could be knowledgeable about Plaintiff's application with Funding Resources.

*Id.* at 4. In Trans Union's view, all of these factors imply that "the denial letter, was fabricated at the direction of Mr. Stein." *Id.* at 12. Trans Union then sought to depose Mr. Stein, and on April 4, 2024, drafted an initial subpoena seeking Mr. Stein's testimony. *Id.* at 5; Doran Decl. ¶ 7 & Ex. E, Subpoena to Judah Stein.

On May 23, 2024, Trans Union served the subpoena via email.[2] *Id.* ¶ 8 & Ex. F, Email. The next day, it also served the subpoena via overnight delivery. *Id.* ¶ 9 & Ex. G, Fed. Express Proof of Service. The subpoena listed a deposition date of June 10, 2024. *See* ECF No. 63-2, Declaration of Eliyahu Babad ("Babad Decl.") ¶ 5 & Ex. 1, Subpoena. Plaintiff filed the present motion to quash on June 6, 2024. *See* ECF No. 63.

Plaintiff argues that the subpoena should be quashed because it seeks information that is irrelevant, privileged, and unduly burdensome in proportion to the needs of the case. Pl.'s Br. at 6-12. Trans Union responds that the deposition would not unduly burden any person or party, and that the information sought is relevant, proportional, and not privileged. Def.'s Opp. at 9-16.[3]

---

[2] Initially, Trans Union had difficulty personally serving the subpoena. Efforts to serve Mr. Stein at home and at work were unsuccessful. *See* ECF No. 53-3, Declaration of Patrick D. Doran, Esquire, ¶¶ 6, 8-9 & Exs. D, F, G. As a result, on April 26, 2024, Trans Union moved for alternative service of the third-party subpoena via email, overnight mail, and certified mail, *see* ECF No. 53, which the Court granted on May 21, 2024, *see* ECF No. 58.

[3] In addition to its substantive arguments, Defendant also attacks the motion on procedural grounds. Specifically, Defendant argues that Plaintiff failed to comply with Local Civil Rule 37.1. Def.'s Opp. at 7-9. Local Rule 37.1 (a)(1) states that counsel must meet and confer to resolve any disputes before filing a discovery-related motion with the court. L. Civ. R. 37.1(a)(1). And Trans Union says that no meet and confer preceded the present motion. Def.'s Opp. at 8-9.

Although Trans Union's point is well taken, the Court will not deny the motion on that basis. "[A] district court can depart from the strictures of its own local procedural rules where (1)

4

**ANALYSIS**

Federal Rule of Civil Procedure 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. When a party serves a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26(b)(1). *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "'Rule 26 [clearly] establishes a liberal discovery policy' and '[t]he federal courts have . . . long permitted broad and liberal discovery." *Khal Anshei Tallymawr Inc. v. Twp. of Toms River*, Nos. 21-2716, 23-3239, 2024 WL 3728069, at *3 (D.N.J. Aug. 8, 2024) (internal citations and quotations omitted). However, the scope of discovery "is not unlimited . . . and should not serve as a fishing expedition." *Burgess v. Galloway*, No. 20-6744, 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021) (quotation and internal quotation marks omitted).

Federal Rule of Civil Procedure 45(d)(3)(A) provides for when a court must quash a subpoena.

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>    (i) fails to allow a reasonable time to comply;
>    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

---

it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000). Here, the Court will overlook the procedural deficiencies to facilitate an expeditious conclusion of fact discovery in this matter.

>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i–iv).

Under Rule 45(d)(3)(A)(iv), "[t]he party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *3 (D.N.J. Sept. 30, 2019) (quoting *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (further citations omitted)). The movant must also show that the subpoena is "unreasonable and oppressive." *Burgess*, 2021 WL 2661290, at *3 (quotation omitted). This burden has been described as "heavy." *Strike 3 Holdings*, 2019 WL 4745360, at *3. Once the movant meets this heavy burden, a court must balance the subpoenaing party's interest in disclosure against the subpoenaed party's interest in non-disclosure to determine whether the burden on the nonparty is undue. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). The balancing test requires the court to weigh (1) the relevance; (2) need; (3) confidentiality of the requested materials; and (4) the harm that compliance would cause the subpoenaed nonparty. *Id.*

When a Rule 45 subpoena is directed to an opposing party's attorney, however, courts tend to scrutinize the request with a "jaundiced eye." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2102, at 27 (2d ed. 1994). The Federal Rules of Civil Procedure do not prohibit the deposition of attorneys. *See* Fed. R. Civ. P. 30(a) (permitting deposition of "any person," including attorneys); 8A *Fed. Prac. & Proc.* § 2102, at 27 ("The fact that the proposed deponent is an attorney, or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition."). Nonetheless, the general rule is that the deposition of counsel to an adversary is disfavored. *See In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) (citing cases).

6

In analyzing whether depositions of opposing counsel are permissible, numerous courts in the Third Circuit have applied the test set forth by the United States Court of Appeals for the Eighth Circuit in *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986).[4] *See, e.g., United States ex rel. Salomon v. Wolff*, No. 17-5456, 2022 WL 989317, at *2 (D.N.J. Mar. 23. 2022) (finding that the *Shelton* factors governed a motion for protective order regarding the deposition of a party's attorney); *Depomed, Inc. v. Purdue Pharma L.P*, No. 13-571, 2017 WL 11673193, at *2 (D.N.J. Dec. 22, 2017) (finding that the *Shelton* factors control); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 1504431, 2017 WL 4155121, at *3 (D.N.J. Sept. 19, 2017) ("This District, like many others, uses the *Shelton* factors when considering whether an attorney should be deposed."); *State Farm Mut. Ins. Co. v. Stavropolskiy*, Nos. 15-5929, 16-1374, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017) (holding that "the *Shelton* rule provides the appropriate

---

[4] The Court is aware that some district courts within the Third Circuit have applied an alternative test set forth in *Johnston Development Group v. Carpenters Local Union No. 1578*, 130 F.R.D. 348 (D.N.J. Feb. 23, 1990). Under the *Johnston* test, the party seeking to preclude an attorney's deposition bears the burden of establishing undue burden or oppression measured by (1) whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony. *Id.* at 353-53; *see Younes v. 7-Eleven*, No. 13-3500 *et al.*, 2015 WL 12843884, at *2 (D.N.J. Mar. 11, 2015); *Recchia v. Kellogg Co.*, No. 10-4899, 2012 WL 762445, at *3-4 (D.N.J. Mar. 6, 2012).

Although the United States Court of Appeals for the Third Circuit has not weighed in on the appropriate standard, several other Circuits have adopted the *Shelton* test. *See, e.g., Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558, 573 (6th Cir. 2015); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999); *but see In re Subpoena Issued to Dennis Freidman*, 350 F.3d 65, 67 (2d Cir. 2003) (concluding that "the deposition-discovery regime of the Federal Rules of Civil Procedure requires a more flexible approach to attorney depositions than the rigid *Shelton* rule" but declining to "rule definitively on the matter" because the issue was rendered moot).

Given the more widespread adoption of the *Shelton* rule, as well as *Shelton*'s recognition that attorney depositions are generally disfavored, the Court will apply the *Shelton* factors. Nonetheless, for the same reasons set forth under *Shelton* analysis *infra*, the Court finds that Plaintiff and Mr. Stein have established that the *Johnston* factors warrant quashing the subpoena.

framework" for analyzing a party's efforts to depose opposing counsel) (citing cases); *Stepanski v. Sun Microsys., Inc.*, No. 10-2700, 2011 WL 899579, at *18 (D.N.J. Dec. 9, 2011) (citing *Shelton* test); *Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 184 (D.N.J. 2012) (adopting *Shelton* test); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006) (relying on the three-factor test of *Shelton*); *Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 215 (D. Del. 2000) (holding that the *Shelton* test provides the framework for analyzing a request for deposition of opposing counsel).

The *Shelton* rule was established to "guard against the 'harassing practice of deposing opposing counsel . . . [that] prolongs and increases the cost of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" *Pamida, Inc. v. V.E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002) (quoting *Shelton*, 805 F.2d at 1330). Under this test, parties seeking to depose opposing trial counsel must demonstrate that: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial the preparation of the case. *Shelton*, 805 F.2d at 1327. The party seeking the opposing counsel's deposition must establish that these three criteria are satisfied. *Salomon*, 2022 WL 989317, at *2.

A.   **Whether Other Means Exist to Obtain the Information**

The first *Shelton* factor requires Trans Union to demonstrate that no other means exist to obtain the information from Mr. Stein. Although there is no obligation to exhaust every available option before requesting the deposition, where the information can be readily obtained from other sources, this factor will not support the subpoenaed deposition. *See Salomon*, 2022 WL 989317, at *4; *Mondis Tech. Ltd.*, 2017 WL 4155121, at *3.

Trans Union contends that "Mr. Stein's knowledge about Plaintiff's claims and alleged damages is a critical piece of the puzzle." Def's Opp. 10. It asserts that one of Plaintiff's claims

8

for damages is that Funding Resources improperly denied a mortgage loan because of the deceased reporting. *Id.* at 10-11. Plaintiff testified that he did not know anything about Funding Resources, and Mrs. Patrick testified that she was the one who applied for the mortgage refinance and was directed to Funding Resources based on Mr. Stein's referral. Doran Decl., Ex. C, Boni Patrick Tr. 39:16-41:25. Mrs. Patrick did not reach out to any other company to refinance. *Id.* at 49:20–25. When Trans Union deposed Mr. Soffer, the Vice President of Funding Resources who signed the mortgage denial letter, Mr. Soffer indicated that he had been friends with Mr. Stein for over twenty-five years and that he often receives referrals from Mr. Stein, but he had no specific recollection about Plaintiff's application or the circumstances of the denial letter. Doran Decl., Ex. M, Soffer Tr. 29:3-30:5, 39:24-43:10. Trans Union now posits that "[s]erious concerns remain about Plaintiff's application with Funding Resources and whether the denial letter[] was fabricated at the direction of Mr. Stein." Def.'s Opp. at 12.

The Court is unpersuaded. Trans Union has already had the opportunity to obtain written discovery from both Plaintiff and Funding Resources and has taken the depositions of Plaintiff, Mrs. Patrick, and Mr. Soffer. Mr. Soffer was able to testify as to the content of his communications with Mr. Stein; Trans Union offers no basis for why it believes that Mr. Stein will know more. Moreover, Plaintiff has represented to Trans Union that Mr. Stein is willing to respond to a limited number of interrogatories, thereby allowing Trans Union to satisfy its suspicions. In short, aside from Trans Union's bald speculation that the denial letter was fabricated at the direction of Mr. Stein, Trans Union has identified no unique information that it could obtain from Mr. Stein that it could not have already obtained from Mr. Soffer. Accordingly, this factor weighs in favor of granting the motion to quash.

        **B.**     <u>**Whether the Information Is Relevant and Not Privileged**</u>

The second *Shelton* factor queries whether the information sought is relevant and non-

privileged. As the "[t]he relevance element . . . appears to be subsumed by the third ("crucial") prong," the Court will focus on the privilege element of *Shelton*'s second prong. *Salomon*, 2022 WL 989317, at *5.

The attorney-client privilege recognizes that "the administration of justice in a complex society depends upon the availability of sound legal advice, and in turn, the soundness of legal advice depends upon clients' willingness to present full disclosures to their attorneys." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). It "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)).

"'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id.* (citing Restatement (Third) of the Law Governing Lawyers § 70 (2000)). "An attorney-client relationship arises when a person manifests an intent that the lawyer provide legal services and the lawyer consents to do so." *Casey v. Unitek Glob. Servs.*, No. 14-2671, 2015 WL 539623, at *2 (E.D. Pa. Feb. 9, 2015) (citing Restatement (Third) of the Law Governing Lawyers § 14 (2000)). "The client need not pay a retainer nor enter into a contract, but the client must enter into the relationship for the purpose of obtaining legal advice." *Id.* (citing *United States v. Costanzo*, 625 F.2d 465, 468 (3d. Cir. 1980); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 392 (W.D. Pa. 2005); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 424 (D.N.J. 2000)). "'The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege.'" *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 281 (W.D. Pa. 2014)

(quoting *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979)).

The Court finds that an attorney-client relationship exists between Plaintiff and Mr. Stein for these purposes, even though Mr. Stein never formally entered an appearance in this case. Plaintiff originally contacted him to determine how to correct his credit reports without litigation. Pl.'s Br. at 2. Simply put, Plaintiff asked a lawyer for legal advice. Mr. Stein agreed and then acted on behalf of, and subject to, the control of Plaintiff for the purposes of providing appropriate counsel. *Id.* Plaintiff asserts that Mr. Stein has provided and continues to "provid[e] legal counsel to Plaintiff and his wife on their issues of Mr. Patrick being reported as deceased." Babad Reply Decl. ¶ 3. In addition, Plaintiff's counsel of record asserts that Mr. Stein is his supervisor, *id.* ¶ 2, and that he regularly consults Mr. Stein, who has been "involved in all stages of this litigation." *Id.* ¶ 8. These facts suffice to establish an attorney-client relationship for present purposes. *See, e.g.*, *Casey*, 2015 WL 539623, at *2 (citing Restatement (Third) of the Law Governing Lawyers § 14 (2000)).

To undercut the existence of the privilege, Trans Union posits two arguments. First, Trans Union argues that certain communications were disclosed to third parties; namely, Mr. Soffer and Mrs. Patrick, thereby abrogating the privilege. *See* Def.'s Opp. at 14.

The communications to Mr. Soffer and Mrs. Patrick, however, do not vitiate the privilege because both are "privileged persons." "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359 (quoting Restatement (Third) of the Law Governing Lawyers § 70 (2000)). To demonstrate that a third party was acting as an agent, a party must show that "the third party's involvement [is] necessary to the lawyer's provision of legal advice." *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 312 (D.N.J. 2008) (citing *Cavallaro v. United States*, 284 F.3d 236, 247-49 (1st Cir. 2002)). "The

11

privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests." *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997).

Here, the nature and content of the communications demonstrate that assistance from Mr. Soffer and Mrs. Patrick was essential to facilitate Mr. Stein's representation of Plaintiff in this matter. First, Mr. Soffer was working as Mr. Stein's agent in receiving, processing, and ultimately denying Plaintiff's application. When communicating with Mr. Soffer, Mr. Stein did so in the course of his representation after being directed to try to resolve the reporting issues without litigation. Second, to the extent Mrs. Patrick participated in the Funding Resources loan application, she, as his wife, was helping her husband resolve a matter about which he had already consulted counsel. Both Plaintiff and Mrs. Patrick consistently testified that Mrs. Patrick generally handles household financial affairs and that she specifically handled the refinance application for the Seminole property, thus demonstrating that her assistance was "necessary to the lawyer's provision of advice" to Plaintiff. *See La. Mun. Police Emps. Ret. Sys.*, 253 F.R.D. at 312 (citations omitted); *see also* Doran Decl. ¶ 6 & Ex. D, Deposition Transcript of Plaintiff Randall J. Patrick, Jr. ("Plaintiff Tr.") at 55:9-12; *id.* ¶ 5 & Ex. C, Boni Patrick Tr. at 39:16-24; ECF No. 68-1, Declaration of Boni Patrick ("Boni Patrick Decl.") ¶ 2. Accordingly, the Court finds that Mr. Stein, Mr. Soffer, Mrs. Patrick, and Plaintiff are all "privileged persons."

In its second argument, Trans Union argues that the communications between Mr. Stein and Mr. Soffer are not privileged because "[s]ubmitting an application for a mortgage refinance is not seeking legal advice or [an] activity conducted in preparation for litigation." Def.'s Opp. at 14.

The Court disagrees and finds that the communications were made in furtherance of an attorney disseminating legal advice. As set forth in detail above, the evidence reveals that Plaintiff

12

first consulted with Mr. Stein in an effort to resolve Trans Union's improper reporting without the need for litigation. In the course of those efforts, Mr. Stein recommended that Plaintiff try to obtain financing from Daniel Soffer at Funding Resources. Plaintiff's ability to obtain such credit directly relates to not only to Trans Union's efforts to correct the reporting error without litigation and thus the viability of any potential FCRA claims, but also to the extent of Plaintiff's damages from Trans Union's actions. Any deposition of Mr. Stein will inevitably wade into protected territory and will likely focus on the precise nature of the privileged communications between Plaintiff and Mr. Stein and Mr. Soffer and Mr. Stein. *See Johnston*, 130 F.R.D. at 352 (cautioning against permitting the depositions of litigation counsel "where the subject matter of the deposition would be likely to be heavily intertwined with privileged or confidential information."); *Younes v. 7-Eleven, Inc.*, No. 13-2500, *et al.*, 2015 WL 12843884, at *3 (D.N.J. Mar. 11, 2015) (denying a motion to compel a deposition of a party's attorney where the party seeking the deposition had "not sufficiently demonstrated that counsel's non-privileged information [could] be parsed from their privileged communications.").[5]

Given that Mr. Stein's communications with Plaintiff, Mrs. Patrick, and Mr. Soffer all fall within the scope of the attorney-client privilege, this *Shelton* factor weighs in favor of quashing the subpoena.

C. **Whether the Information Sought Is Crucial Trans Union's Defenses**

Under the third *Shelton* factor, "'for information to be crucial, it must have some greater importance to the action than merely being relevant.'" *Salomon*, 2022 WL 989317, at *6 (quoting *Ditech Fin. LLC v. SFR Invesstments Pool 1, LLC*, No. 14-476, 2016 WL 4370034, at *3 (D. Nev.

---

[5] Mr. Stein also contends that the information sought by Trans Union is protected by the work-product doctrine. Because the Court has already found that attorney-client privilege applies, the Court need not address this argument.

Aug. 15, 2016)). "'Crucial' information includes information necessary for the survival of a claim or defense.'" *Id.* (quoting *Hanover Ins. Co. v. Terra S. Corp.*, 2019 WL 5963986, at *8 (D. Nev. Nov. 12, 2019) (further quotations omitted)). When the deposition of an adverse attorney is sought, testimony on "central factual issues, rather than peripheral concerns . . . weigh more heavily for the proportionality of the discovery sought." *Johnston*, 130 F.R.D. at 353 (D.N.J. 1990).

Here, the subpoenaed information does not implicate core factual issues relevant to any parties' claim or defense. Trans Union contends that "concerns remain [regarding] . . . whether the denial letter, was fabricated at the direction of Mr. Stein." Def.'s Opp. at 12. These concerns, however, do not pertain to any theory of liability or defense under the FCRA; rather they relate strictly to one element of Plaintiff's damages, *i.e.*, the denial of his mortgage refinancing application. Moreover, the deposition would be duplicative of the testimony already given by Plaintiff, Mrs. Patrick, and particularly Mr. Soffer, who was privy to all discussions between himself and Mr. Stein. Simply because Trans Union hopes that it may receive different answers than those already obtained does not open the door to an intrusive deposition of Plaintiff's attorney.

Finally, although undue burden is not part of the *Shelton* test, the Court nonetheless weighs the lack of cruciality of Mr. Stein's testimony against the privileged nature of the communications sought and the serious prospect of oppression/undue burden resulting from any such deposition. Courts should be wary of the "'harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) [when it] appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" *Johnston*, 130 F.R.D. at 353 (citing *Shelton*, 805 F.2d at 1330). While the Court declines to ascribe any bad faith to Trans Union counsel, the Court finds that the questioning is "likely to be heavily intertwined with

privileged or confidential information" available from other sources. *Id.* at 352 (citing *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429 (E.D. Pa. 1981)); *see also Recchia v. Kellogg Co.*, No. 10-4899, 2012 WL 762445, at *6 (D.N.J. Mar. 6, 2012) ("[T]he first prong of the *Johnston* test [proportionality,] weighs heavily against granting the motion to compel because the information sought via the deposition of Plaintiff's counsel would not bear on central factual issues in this case and, in any event, the information sought is privileged, therefore, the deposition of Plaintiff's counsel is disproportionate to Defendant's legitimate discovery needs.").

## CONCLUSION

For the foregoing reasons, the Court finds that permitting Trans Union to depose Mr. Stein will unnecessarily interfere with the adversarial process for the speculative purpose of discovering information available from other sources. Nonetheless, the Court takes note of Mr. Stein's offer to respond to written questions in lieu of being deposed and finds that Trans Union may avail itself of the opportunity. Plaintiff's Motion to Quash is **GRANTED**. An appropriate Order follows.

> s/Elizabeth A. Pascal
> ELIZABETH A. PASCAL
> United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.